UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| T.D., a minor student, by and through her parents, W.D. and H.D., and all persons similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>RUTHERFORD COUNTY BOARD OF EDUCATION,<br><br>    Defendant. | Case No. 3:16-cv-1488<br>Judge Aleta A. Trauger |

## MEMORANDUM

Pending before the court is a Motion to Dismiss (Docket No. 7) filed by the defendant, Rutherford County Board of Education ("RCBOE"), to which the plaintiff, T.D., has filed a Response (Docket No. 9), RCBOE has filed a Reply (Docket No. 13), and T.D. has filed a Sur-Reply (Docket No. 16). For the reasons discussed herein, the motion will be granted.

## BACKGROUND AND PROCEDURAL HISTORY

On June 21, 2016, T.D., by and through her parents and on behalf of all others similarly situated, filed this proposed class action against RCBOE, bringing claims for violation of the Individuals with Disabilities Act, 20 U.S.C. § 1400 *et seq.* (the "IDEA") and Tennessee's special education laws, Tenn. Code Ann. § 49-10-101 *et seq.*, and seeking declaratory and injunctive relief.[1] (Docket No. 1.) According to the Complaint, T.D. is a minor child who attends

---

[1] As discussed more fully below, this action is clearly based on allegations that the plaintiff and others similarly situated have been denied access to a free appropriate public education ("FAPE"). Accordingly, the IDEA (or other related federal laws) provides the sole remedy, to the exclusion of any state law claims. *See, e.g., Sabaski v. Wilson County Bd. of Educ.*, No. M2010-00872-COA-R3-CV, 2010 WL 5289798, at *4 (Tenn. Ct. App. Dec. 27, 2010); *Hicks v. Benton Cnty. Bd. of Educ.*, No. 14-1345, 2016 WL 7028954, at *11 (W.D. Tenn. Dec. 1, 2016);

1

Lascassas Elementary School in Lascassas, Tennessee, and resides in Murfreesboro, Tennessee, both within Rutherford County. RCBOE is authorized to administer public schools within Rutherford County, including the school T.D. attends. T.D. was born in April of 2005. She has an intellectual disability and substantial needs in gross and fine motor control, requires directional assistance, is not toilet-trained, is non-verbal, and has limited ability to sit, stand, stomp, clap, or use school tools without hand-over-hand assistance. As a result, T.D. has an Individualized Education Program ("IEP") that provides her with special education and related services. The Complaint explains that related services are developmental, corrective, or other support services that are mandated for children with disabilities as needed (including physical, speech, and occupational therapies, as well as other counseling and therapeutic services). According to the Complaint, "related services" include both direct services (a service provider provides the services directly to the student, through individual or small group therapy) and indirect services or "consultation" (the provider does not interact with the student but, instead, provides directives to educators in the student's school, who can then carry out the therapies with the student).

The Complaint makes the conclusory allegation that the claims in this action arise from *systemic* issues within RCBOE relating to the provision of related services under the IDEA and, therefore, exhaustion of the state administrative procedures is unwarranted. In particular, the Complaint alleges that a Senior Occupational Therapist within the Rutherford County school

---

*L.H. v. Hamilton Cnty. Dep't of Educ.*, No. 1:14-cv-00126, 2015 WL 1926226, at *2 (E.D. Tenn. Apr. 27, 2015). The Sixth Circuit, however, has held that "it is settled that even if a school district complies with federal law, it may still violate the [IDEA] if it fails to satisfy more extensive state protections that may also be in place." *Doe By and Through Doe v. Board of Education of Tullahoma City Schools*, 9 F.3d 455, 457 (6th Cir. 1993). Accordingly, the court reads the Complaint as bringing a single claim under the IDEA, based on RCBOE's alleged non-compliance with the provisions of both the IDEA itself and Tennessee's special education laws.

system, Matt Barnett, placed in writing and disseminated a policy and practice for Rutherford County that aims to remove or reduce related services in order to save money for RCBOE (the "Barnett Memo").[2] According to the Complaint, the Barnett Memo, which was given to parents, states the following with respect to the provision of related services:

> 1. Are the goals of the student that have been developed by the related service provider static over an extended period of time (e.g. years)? 2. Has the special education staff been trained to provide the interventions that the related service provider initiated? 3. What is the least restrictive environment for the student? If the answers to questions 1 and 2 are yes then the answer to question 3 is consultation and perhaps eventual graduation from the related service.

(*Id*. at ¶ 13.) The Complaint then further alleges that:

> RCBOE allows children's goals to remain stagnant or "static," sometimes for years, rather than modifying the goals. RCBOE then uses this stagnation as justification for eliminating or reducing related service therapies. The practice is so widespread that RCBOE understaffs service providers, telling families there are not enough to go around. By using the illegal formula, RCBOE has been able to deny and deprive children, including T.D., of related services which saves RCBOE money.

(*Id*. at ¶¶ 7-8.)

The Complaint does not, however, point to any examples of RCBOE's improperly determining – or influencing a service provider's determination – that a student's goals are static for an extended period. The Complaint implies that T.D.'s goals have been held static when they should not have been but does not link this to any policy or practice by RCBOE beyond the above quoted allegation that RCBOE "allows" this in order to justify a reduction in services.

---

[2] In its Reply brief on the pending motion, RCBOE asserts that this writing neither represents an official adopted policy of RCBOE, nor was widely distributed, but, rather, that it was written by a single occupational therapist for the sole purpose of explaining to T.D.'s parents why T.D. was denied *direct* related services. (Docket No. 13, pp. 4-5.) As the plaintiff notes in her Sur-Reply, for purposes of a Motion to Dismiss, the court must assume the facts as pled in the Complaint to be true and not attempt to resolve factual disputes at this stage of the litigation. For purposes of this motion, the court will assume that this writing represents a position of RCBOE that impacts all special needs students.

Nevertheless, the Complaint characterizes RCBOE's practices as a "standard policy utilizing illegal 'static goals,' which result in improper denial or reduction of services" for students with special needs, (i*d*. at ¶ 6) and states that, as a result, RCBOE uses "an illegal formula for determining 'related services' under the IDEA." (*Id*. at 7.) The Complaint alleges that this type of formulaic approach violates the IDEA and Tennessee's special education laws because a student's goals should never be static over an extended period of time, citing 20 U.S.C. § 1414(d)(4)(A) and 34 C.F.R. § 300.320(a)(2)(i).

The Complaint further alleges that RCBOE has 5,350 students who suffer from certain enumerated primary disabilities and that RCBOE does not directly employ a physical therapist but has contracted with only four outside physical therapists. The Complaint implies that this is insufficient to serve RCBOE's student population. To further support the allegation that RCBOE provides insufficient related services to its students, the Complaint alleges that all but 137 RCBOE students have had their physical therapy services (direct or consultative) reduced or removed, and all but 303 have had their occupational services (direct or consultative) reduced or removed. The Complaint does not, however, provide any details regarding how many of those students should be receiving more services than they are (or by what standard), nor does the Complaint contain any other allegations to show that students are receiving inadequate services. Finally, the Complaint alleges that RCBOE routinely tells parents that it "'lacks the staff' to provide the necessary related services or that existing staff is already too taxed and that 'it is not possible' to provide needed services," and that RCBOE intentionally creates understaffing to justify denial of services. (*Id*. at ¶ 23.) The Complaint does not, however, point to any specific instances in which this has taken place, aside from (presumably) with respect to T.D., nor does the Complaint allege any details to show that this is done as a matter of RCBOE policy.

4

The particular factual allegations in the Complaint center on T.D., alleging that she currently needs *direct* therapy services in order to continue to make reasonable academic, functional, and social progress and to avoid being stigmatized by her peers; yet, using the formula cited in the Barnett Memo, and due to the fact that T.D. currently has static goals in her IEP, RCBOE has gradually removed T.D.'s direct services. She currently receives only the following consultative services per year: four hours of speech therapy consultation (broken into eight thirty-minute sessions), forty-five minutes of physical therapy consultation (broken into three fifteen-minute sessions), and four hours of occupational therapy consultation (broken into eight thirty-minute sessions). The Complaint alleges that these services are inadequate to address T.D.'s educational needs. No other RCBOE students are identified, but the Complaint suggests that there are other similarly situated students within RCBOE, whose related services have likewise been reduced on the basis that their goals have remained static. Again, however, there are no specific factual allegations to show that goals are being improperly determined (or influenced) by RCBOE for T.D. or any other RCBOE student, nor that services provided to any student are insufficient.

Based on these allegations, the Complaint requests a declaratory judgment that RCBOE's policies, actions, and practices violate the IDEA. The Complaint also seeks an injunction 1) prohibiting RCBOE's continued use of the policy outlined in the Barnett Memo, 2) requiring RCBOE to reevaluate all eligible children for related services, 3) prohibiting goals from remaining "static" for an extended period, 4) directing RCBOE to monitor and correct any impermissible criteria for determining direct services within Rutherford County, and 5) requiring RCBOE to provide training and resources on how to appropriately determine related services, and to provide compensatory education for impacted students.

On July 20, 2016, RCBOE filed the currently pending Motion to Dismiss under Rule 12(b)(6), along with an accompanying Memorandum, arguing that T.D. has failed to state a claim due to failure to exhaust administrative remedies. (Docket Nos. 7 and 8.) RCBOE also argues that the allegations in the Complaint do not meet the requirements for certification of a class action. On July 21, 2016, T.D. filed a Response in opposition. (Docket No. 9.) On August 8, 2016, RCBOE filed a Reply (DocketNo.13), the attachments to which were filed on August 11, 2016 (Docket No, 17) and, on August 11, 2016, T.D. filed a Sur-reply (Docket No. 16).

## LEGAL STANDARD

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference

6

that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

## **ANALYSIS**

Under the IDEA, state educational agencies are required to provide administrative impartial due process hearings for students challenging any matter relating to their receipt of a FAPE. 20 U.S.C. § 1415(b)(6)(f)-(g); 20 U.S.C. § 1415(b)(6)(k). While the IDEA provides for a private right of action, it requires that plaintiffs first exhaust the administrative procedures. 20 U.S.C. § 1415(i); *see also S.E. v. Grant Cnty Bd. of Educ.*, 544 F.3d 633, 642 (6th Cir. 2008). The Sixth Circuit has held that the rationale behind this exhaustion requirement is that:

> the IDEA gives the 'primary responsibility . . . for choosing the education method most suitable to the child's needs . . . to state and local educational agencies in cooperation with the parents or guardian of the child.' The federal courts are not the entities best equipped to craft an IEP or remedial substitutes. They are, instead, suited to reviewing detailed administrative records, such as those that would be furnished through due process hearings . . . under the IDEA.

*Long v. Dawson Springs Indep. Sch. Dist.*, 197 F. App'x 427, 433-34 (6th Cir. 2006) (quoting *Bd. of Educ. of Hendrick Hudson Central Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 207 (1982)); *see also Frye v. Napoleon Cmty. Schs.*, 788 F.3d 622, 626 (6th Cir. 2015) (holding that the IDEA "calls for a highly fact-intensive analysis of a child's disability and her school's ability to accommodate her" and that the administrative exhaustion procedures "ensure that the child's parents and educators, as well as local experts, are first in line to conduct this analysis").

Administrative exhaustion of an IDEA claim, however, is not required "when it would be futile or inadequate to protect the plaintiff's rights." *Donoho ex rel. Kemp v. Smith Cnty. Bd. of Educ.*, 21 F. App'x 293 (6th Cir. 2001) (citing *Covington v. Knox Cnty. Sch. Sys.*, 303 F.3d 912, 915 (6th Cir. 2000); *Crocker v. Tenn. Secondary Sch. Athletic Ass'n*, 873 F.2d 933, 935 (6th

7

Cir.1989)); *see also Honig v. Doe*, 484 U.S. 305 (1988) (holding that a claim under the predecessor statute to the IDEA could proceed in federal court without prior administrative exhaustion, where such exhaustion would be futile). In two recent cases, this court has held that an IDEA claim may, accordingly, be exempt from exhaustion where the claim challenges a systemic policy or practice that is alleged to inherently violate the IDEA with respect to all students for whom it is applied, and where there is no need to develop a record regarding the educational needs or IEP of any individual student in order to determine whether such a violation has occurred. *N.S. v. Tenn. Dep't of Educ.*, No. 3:16-cv-0610, 2016 WL 3763264, *10 (M.D. Tenn. July 14, 2016) (citing *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 114-15 (2d Cir. 2004)); *W.H. v. Tennessee Dep't of Educ.*, No. 3:15-1014, 2016 WL 236996, at *6 (M.D. Tenn. Jan. 20, 2016).

By alleging that, in following the steps outlined in the Barnett Memo, RCBOE has implemented a system-wide policy or practice that violates the IDEA, the plaintiff seeks to avoid administrative exhaustion. The alleged policy at issue here does not, however, provide the basis to support this type of challenge. To the contrary, the plain language of the Barnett Memo describes an individualized process for determining related services for students. It expressly calls for individualized evaluations of related services for each student and notes only that services will *perhaps* be reduced when a student's goals remain static over time. There is no blanket denial of services. The plaintiff points to no provision of the IDEA or the Tennessee special education laws that prohibits a student's goals from remaining static, if that is what the student's IEP team believes to be appropriate. The section cited in the Complaint for the proposition that static goals are improper – 20 U.S.C. § 1414(d)(4)(A) – simply states:

> The local educational agency shall ensure that, subject to subparagraph (B), the IEP team (i) reviews the child's IEP periodically, but not less frequently than

> annually, to determine whether the annual goals for the child are being achieved; and (ii) revises the IEP as appropriate to address – (I) any lack of expected progress toward the annual goals and in the general education curriculum, where appropriate; (II) the results of any reevaluation conducted under this section; (III) information about the child provided to, or by the parents, as described in subsection (c)(1)(B); (IV) the child's anticipated needs; or (V) other matters.

Nowhere in the Barnett Memo, as quoted in the Complaint, does it state that students' IEPs will *not* be reviewed as required by this section, nor are there any allegations in the Complaint that they are not so reviewed. To the contrary, the Barnett Memo expressly indicates that these reviews are taking place for providers to determine each student's goals and whether they should remain static over time.

With respect to the indication in the Barnett Memo that related services may be provided by consultative, rather than direct, service, the Complaint again points to no provision of the IDEA or the Tennessee special education laws that requires related services to be provided via direct services rather than consultative ones, if consultative services are sufficient to meet the student's needs. Moreover, the Barnett Memo, as quoted in the Complaint, plainly states that consultative services are used in place of direct services only when there is an individualized determination that this replacement is sufficient because 1) the student's goals have been clearly identified and 2) the educators working with the student have been sufficiently trained to continue to provide those services, with ongoing consultation. The allegations that goals are, then, purposely kept static in order to justify consultative services or a *possible* gradual reduction in services appears to be merely speculative and is supported by no allegations of any systemic policy for doing so and no examples of students, aside from T.D., whose goals have been allegedly kept static when they should not have been.

Finally, the allegations in the Complaint regarding the number of related service providers and the number of special needs students appear to be another misguided attempt to

9

frame this action as the type that does not require administrative exhaustion. In fact, however, these allegations do not support a claim for a violation of the IDEA, where there are no facts to suggest that any student's needs are not being met. The allegation that unidentified parents have been told that RCBOE lacks providers is insufficient on its own to show that there is a policy or practice of not providing needed services. The plaintiff cites *Deal v. Hamilton County Board of Education*, 392 F.3d 840, 864-65 (6th Cir. 2004) for the proposition that challenges to cost-saving decisions by a state or local education agency (such as hiring a limited number of providers or providing consultative services in lieu of direct services) should never require exhaustion because an administrative hearing will always favor the cost-saving result. If that were the rule, however, it would, effectively, undermine the propriety of any administrative challenge and make the exhaustion requirement a hollow one, because most challenges to an IEP will involve a student arguing for more, not less, services, and it would always be a cost-saving decision to deny such a challenge. In fact, *Deal* does not discuss the exhaustion requirement at all, and the plaintiff in *Deal* administratively exhausted his claim before filing suit in federal court. The section of the *Deal* opinion cited by the plaintiff states only that judicial intervention may be necessary where a school has chosen a cost-saving mechanism that goes *beyond* its right to consider cost in devising an educational program and crosses into a denial of a student's right to a FAPE. *See id.*

There are simply no factual allegations in the Complaint to show that additional providers are actually needed or that any student, aside from T.D., is not getting the services he or she needs. Even with respect to T.D., there is only a conclusory statement that she is not getting sufficient services, with no underlying allegations about the amount of services she should be receiving or what that determination is based on. There are no explicit factual allegations to

suggest that T.D.'s goals should not have remained static over time, or that her goals as determined by her providers were improperly influenced by any policies of RCBOE. The Complaint plainly states that T.D. is receiving ongoing consultative services, and the implication is that there has been a determination by her IEP team that these services meet her needs. The proper forum to challenge that determination is an individual administrative hearing.

Allowing this action to proceed in federal court without exhausting this administrative process, simply because the Complaint alleges that the denial of services to T.D. must be linked to a systemic policy or practice, would open the floodgates to allow any IDEA challenge to avoid exhaustion simply by invoking some version of this magic language. This would make a mockery of the administrative exhaustion requirement and allow for any student who wishes to challenge her receipt of services to simply point to whatever policy or practice appears to be related to the alleged inadequacy of her IEP, make the blanket conclusory allegation that other students are likewise impacted, and proceed straight to federal court. Such a result would be untenable.

This case is patently different from *N.S.* and *W.H.*, where the challenged systemic policies (an alleged improper system for monitoring and regulating the use of isolation and restraint and an alleged improper protocol for IEP determinations that precludes individual educators from being aware of, and choosing, available less restrictive options, respectively) might be found to violate the IDEA on their face, without any need for further determination of any individual student's needs or IEP plans. Likewise, this case is distinguishable from another case cited by the plaintiff, where no exhaustion was required for a challenge to a system-wide policy of *requiring* students to receive related services on-site through their schools, rather than through independent providers (a change that would require many special needs students to have

11

to find new school placements, where their schools could no longer accommodate them). *See M.G. v. New York City Dep't of Educ.*, 162 F.Supp3d 216 (S.D.N.Y. 2016). The policy at issue here, to the contrary, makes no such blanket determinations about the provision of services to any individual student, and whether the IDEA has been violated is a question that will turn on a factual review of whether an individual student has been denied a FAPE, given his or her particular need for related services and the amount and quality of services that have been provided. These are questions that must be initially answered through the administrative process.

Because this action will be dismissed for failure to administratively exhaust, the court need not reach the question of whether class certification is appropriate. For the reasons stated above, however, class certification is unlikely to be appropriate in this situation, given the dearth of factual allegations involving any students aside from T.D. and the fact that the unique constellation of needs addressed by any individual student's IEP is unlikely to be compatible with the commonality required for class action litigation.

## CONCLUSION

For the foregoing reasons, RCBOE's Motion to Dismiss will be granted and this action will be dismissed without prejudice.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge